IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINA W., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case #4:19-cv-00028-PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Christina W.'s appeal from the decision of the Social Security Administration denying her application for disability insurance benefits and supplemental security income. The Court held oral arguments on November 13, 2019. Having considered the parties' arguments, the record, and relevant case law, the Court will reverse and remand the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

### A. PROCEDURAL HISTORY

On August 26, 2015, Plaintiff filed an application for disability and disability insurance benefits.[7] She also filed an application for supplemental security income benefits.[8] Both claims alleged disability beginning on June 1, 2014. The claims were denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on March 20, 2018.[10] The ALJ issued a decision on June 5, 2018, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on March 7, 2019,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

---

[4] *Richardson*, 402 U.S. at 390.
[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).
[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).
[7] R. 263–69.
[8] *Id.* at 270–79.
[9] *Id.* at 191–94, 195–98, 201–03, 204–06.
[10] *Id.* at 91–111.
[11] *Id.* at 38–61.
[12] *Id.* at 1–7.
[13] 20 C.F.R. § 422.210(a).

On April 15, 2019, Plaintiff filed her complaint in this case.[14] The Commissioner filed his answer and the administrative record on July 5, 2019.[15] On July 8, 2019, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[16] Plaintiff filed her Opening Brief on August 16, 2019.[17] Defendant filed his Answer Brief on September 20, 2019.[18] Plaintiff filed her Reply Brief on October 4, 2019.[19]

B. MEDICAL HISTORY

Plaintiff has a history of both mental health issues and physical ailments. In late May 2014, just prior to her alleged onset date, Plaintiff was hospitalized after presenting to the emergency room with depression and suicidal ideation.[20] At the time, she had been using methamphetamine and heroin,[21] substances she continued to struggle with. Plaintiff has been diagnosed with anxiety and borderline personality disorder.[22] She also has a history of difficulty sleeping.[23] She was supposed to have a sleep study done but her insurance did not cover it.[24]

---

[14] Docket No. 3.
[15] Docket Nos. 8, 9.
[16] Docket No. 13.
[17] Docket No. 17.
[18] Docket No. 18.
[19] Docket No. 19.
[20] R. at 472–591.
[21] *Id.* at 562.
[22] *Id.* at 1003, 1622.
[23] *Id.* at 1005.
[24] *Id.* at 1316.

Plaintiff was hospitalized for five days in April 2015 due to depression and suicidal ideation.[25] In March 2016, Plaintiff overdosed on pills in a suicide attempt.[26] She continued to have suicidal thoughts for months afterward.[27] She was again hospitalized for suicidal ideation from January 30 to February 6, 2017.[28] Plaintiff was using controlled substances at that time but was motivated to obtain sobriety.[29]

In May 2017, Plaintiff started intensive treatment with Southwest Behavioral Health.[30] Plaintiff was provided housing and engaged in both group and individual therapy sessions.

With respect to her physical ailments, Plaintiff has been diagnosed with diabetes mellitus and she has been seen in the emergency room due to hypoglycemic episodes.[31] Additionally, Plaintiff has experienced pelvic and adnominal pain for which she has received treatment at the emergency room. Plaintiff ultimately underwent surgery for endometriosis.[32] Plaintiff was also diagnosed with an ovarian cyst, which was removed.[33]

Plaintiff has reported chronic pain and has been diagnosed with fibromyalgia. Plaintiff has also reported migraines.[34] Plaintiff has taken various medications in an attempt to alleviate

---

[25] *Id.* at 1088.
[26] *Id.* at 1560.
[27] *Id.* at 1503.
[28] *Id.* at 1435.
[29] *Id.*
[30] *Id.* at 1637.
[31] *Id.* at 613.
[32] *Id.* at 853.
[33] *Id.* at 1184.
[34] *Id.* at 1086.

4

her pain without much success.[35] In October 2015, Plaintiff requested a referral for pain management.[36] Plaintiff again requested a referral to pain management in September 2016.[37] Additionally, Plaintiff is considered morbidly obese.[38]

Plaintiff also has a history of asthma and has received treatment for this impairment.[39]

C.     HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that she lived in an apartment with two other roommates.[40] Plaintiff stated that her housing was provided by the Southwest Behavioral Center.[41] Plaintiff stated that she was in mental health court and had been sober for six months, which included a three-month stay at a treatment center.[42]

Plaintiff stated that both physical and mental aliments prevented her from working.[43] To treat her mental health issues, Plaintiff testified that she sees two therapists, each of whom she sees once a week, and that she goes to group therapy three times a week.[44] Additionally, she

---

[35] *Id.* at 1618.
[36] *Id.* at 1281.
[37] *Id.* at 1618.
[38] *Id.* at 651.
[39] *Id.* at 955.
[40] *Id.* at 95.
[41] *Id.*
[42] *Id.* at 101–02.
[43] *Id.* at 98–99.
[44] *Id.* at 99.

takes anti-depressants, which help her.[45] To treat her physical ailments, Plaintiff stated that she takes pain medication and does yoga.[46]

Plaintiff testified that she was able to take the bus when she needed to go somewhere.[47] On a typical day, Plaintiff stated that she would attend therapy and then return home.[48] At home, Plaintiff testified that she was able to do laundry, prepare meals, and do the dishes.[49] Plaintiff stated that her social worker helps her and takes her grocery shopping.[50] In addition, Plaintiff states that she goes to church once a week and to a friend's house twice a month.[51]

When asked if she had difficulties getting along with others, Plaintiff stated "not really."[52] However, Plaintiff went on to state that she tends to isolate herself and feels uncomfortable around others.[53] Plaintiff further stated that being in a crowd of people causes her anxiety.[54] As a result, she goes to the grocery store when no one is there and uses self-checkout.[55] However, she stated that she gets along with her roommates, though she has limited interaction with them.[56]

---

[45] *Id.* at 99–100.
[46] *Id.* at 100.
[47] *Id.* at 96.
[48] *Id.* at 102.
[49] *Id.*
[50] *Id.* at 103.
[51] *Id.*
[52] *Id.* at 106.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.* at 108.

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 1, 2014.[57] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: morbid obesity, diabetes mellitus, anxiety disorder, affective disorder, substance addiction disorder, and borderline intellectual functioning.[58] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[59] At step four, the ALJ found that Plaintiff had no past relevant work.[60] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, she was not disabled.[61]

## III.  DISCUSSION

Plaintiff raises the following issues in her brief: (1) whether the agency erred in its evaluation of the severity of Plaintiff's mental impairments; and (2) whether the ALJ erred in her evaluation of medical opinion evidence.

---

[57] *Id.* at 43.
[58] *Id.*
[59] *Id.* at 44.
[60] *Id.* at 51.
[61] *Id.* at 51–52.

A. MENTAL IMPAIRMENTS

   *1. ALJ*

In evaluating the "paragraph B" criteria of Listings 12.02, 12.04, and 12.06, the ALJ found that Plaintiff had: mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentration, persistence, and pace; and mild limitations to adapt and manage herself.[62] Plaintiff attacks several of the factual determinations that support these conclusions.

First, to support the determination that Plaintiff had mild limitations in understanding, remembering, or applying information, the ALJ noted that Plaintiff was able to perform the bulk of her activities of daily living independently, including shopping, household chores, and personal finances. However, Plaintiff contends that she receives help for many of these activities. She further points out that she lives in structured housing, which belies the notion that she is able to do these activities independently.

Second, the ALJ found that Plaintiff had mild limitations in interacting with others. For support, the ALJ noted that Plaintiff reported that she did not have any problems getting along with family, friends, neighbors, and others. The ALJ further noted that Plaintiff got along "great" with authority figures and had never been fired or laid off because of problems getting along with others.[63] In addition, the ALJ pointed to evidence that Plaintiff was able to participate in activities that likely would involve interactions with others. To counter this,

---

[62] *Id.* at 44–46.
[63] *Id.* at 343.

8

Plaintiff points to evidence of a contentious relationship with her grandparents, an abusive relationship with her husband, and an arrest for exposing a baby to drug use.

Third, to support her conclusion that Plaintiff had mild limitations for adapting and managing herself, the ALJ pointed to Plaintiff's reported ability to perform the bulk of her activities of daily living independently, including personal care, meal preparation, household chores, going out alone, using public transportation, shopping in stores, and managing personal finances. Plaintiff argues that the ALJ failed to mention her substance abuse, multiple arrests, assignment to take part in drug court, abusive relationships, or living in structured housing while participating in an intensive substance abuse and mental health treatment program.

Finally, Plaintiff also argues that the ALJ noted that Plaintiff began working at Arby's in June 2017, but did not acknowledge that Plaintiff earned less than $100 at this job and was unable to continue with this work.

All of the ALJ's findings are supported by substantial evidence, including Plaintiff's own testimony. To be sure, there is evidence in the record that could support different conclusions. "The ALJ was entitled to resolve such evidentiary conflicts and did so."[64] Plaintiff essentially asks the Court to reweigh the evidence to reach a different conclusion. However, this is "a task we may not perform."[65] Instead, the Court's role is to determine whether the ALJ's findings are supported by substantial evidence. Having made a careful review of the entire records, the Court concludes that they are.

---

[64] *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).
[65] *Id.*

Plaintiff further argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word.[66] Therefore, the Court finds no error in the ALJ's findings as they relate to Plaintiff's mental impairments.

   2.   *Appeals Council*

Plaintiff also argues that the Appeals Council erred in its treatment of evidence submitted after the ALJ issued her decision. After the ALJ's decision, Plaintiff submitted evidence of two hospitalizations to the Appeals Council, one occurring before the ALJ's decision and the other after. In response, the Appeals Council stated:

> You also submitted medical records from Dixie Behavioral Health, dated May 25, 2018 to May 28, 2018 (28 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
> You submitted medical records from Dixie Behavioral Health, dated July 16, 2018 to July 20, 2018 (22 pages). The Administrative Law Judge decided your case through June 5, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 5, 2018.[67]

The Tenth Circuit, consistent with Social Security regulations, has held that the Appeals Council is required to consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's

---

[66] *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.").

[67] R. at 2.

10

decision."⁶⁸ The relevant regulations were amended in 2017 to include the requirement that there be "a reasonable probability that the additional evidence would change the outcome of the decision."⁶⁹

Whether evidence qualifies for consideration by the Appeals Council "is a question of law subject to our de novo review."⁷⁰ "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision."⁷¹ "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard."⁷² "Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings."⁷³

The Court must first determine how the Appeals Council treated the new evidence submitted by Plaintiff.

> If the Appeals Council did not consider the additional evidence because it did not qualify for consideration . . . then the question on appeal is whether the Appeals Council erred in failing to do so. If the Appeals Council did accept and consider

---

⁶⁸ *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quoting *Box v. Shalala*, 52 F.3 168, 171 (8th Cir. 1995)).

⁶⁹ 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

⁷⁰ *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (quotation marks omitted).

⁷¹ *Id.*

⁷² *Id.*

⁷³ *Id.*

11

the new evidence, then the question on appeal is whether the ALJ's decision was supported by substantial evidence in light of the new evidence.[74]

### a. May Records

With respect to the records from May 2018, the Appeals Council found that they did not show a reasonable probability that they would change the outcome of the ALJ's decision and, therefore, the Appeals Council "did not exhibit this evidence."[75] Courts have struggled to discern the meaning of this and similar language.[76] "Some have read it to mean that the Appeals Council necessarily 'considered' the newly-submitted evidence, and others have concluded that the Council's express statement that it did not 'consider' or 'exhibit' evidence means it only 'looked at' the evidence."[77] Still others "will sometimes review the evidence for themselves to decide whether it would impact the outcome."[78]

The Commissioner contends that the Appeals Council submitted the new evidence, thus making it part of the record for the Court to review. In support, the Commissioner cites to *Martinez v. Barnhart*.[79] In that case, the Appeals Council accepted the late-submitted records and the Tenth Circuit interpreted this to be an "implicit determination" that the records qualified

---

[74] *Padilla v. Colvin*, 525 F. App'x 710, 712 n.1 (10th Cir. 2013).

[75] R. at 2.

[76] *See Vahey v. Saul*, No. 18-00350-ACK-KJM, 2019 WL 3763436, at *7–10 (D. Haw. Aug. 9, 2019) (discussing cases).

[77] *Id.* at *7.

[78] *Id.* at *9,

[79] 444 F.3d 1201 (10th Cir. 2006).

12

as new evidence.[80] Because the Appeals Council considered those treatment records, they became part of the administrative record to be considered in evaluating the ALJ's decision.[81]

The Court need not determine the appropriate methodology as it relates to the May 2018 records because the result would be the same. The May 2018 medical records show that Plaintiff was hospitalized from May 25 to May 28, 2018, at Dixie Behavioral Health.[82] Plaintiff reported that she was "severely depressed" and had increased paranoia after she saw her ex-husband.[83] After admission, Plaintiff related that she was feeling better and was no longer feeling suicidal.[84] By the time of discharge, Plaintiff's risk of harm to herself or others was low.[85]

Assuming that the Appeals Council did not consider this evidence because it did not qualify for consideration, the Court cannot conclude that this was error. While Plaintiff's hospitalization was no doubt serious, it stands in contrast to the treatment notes from the relevant period and Plaintiff's hearing testimony, which support the ALJ's determination. This evidence does not demonstrate a reasonable probability that the decision would change. If, on the other hand, the Appeal Council did consider the evidence, it becomes part of the record for review and the Court must determine whether the ALJ's decision is supported by substantial evidence in light of this new evidence. The Court has reviewed the entire record, including the May 2018

---

[80] *Id.* at 1207.
[81] *Id.* at 1208.
[82] R. at 62–89.
[83] *Id.* at 64.
[84] *Id.* at 63–64.
[85] *Id.* at 79.

records, and concludes that substantial evidence supports the ALJ's decision. Therefore, remand is not required on this ground.

### b. July Records

The July records present a different issue. The Appeals Council stated that they did not relate to the period at issue. In a similar circumstance, the Tenth Circuit has concluded that the Appeals Council's rejection of evidence based on temporal relevance demonstrated that the Appeals Council did not consider the evidence.[86] The court reasoned that "[b]ecause temporal relevance is one of the predicate requirements under § 416.1470(b) to warrant consideration, the Appeals Council could not have considered the additional evidence after it found the new evidence was not temporally relevant."[87] Thus, the question became whether the Appeals Council should have considered the additional evidence.[88] To make this determination, the Court must decide whether the Appeals Council's determination that the July records do not relate to the time period on or before the ALJ's decision was proper.

"Evidence is chronologically pertinent if it relates to the time period on or before the ALJ's decision."[89] The Tenth Circuit has found that evidence is chronologically pertinent if it corroborates a prior diagnosis or is supportive of prior hearing testimony.[90] Here, the evidence of an additional hospitalization provides support for Plaintiff's hearing testimony and

---

[86] *Padilla*, 525 F. App'x at 712. Though *Padilla* is an unpublished decision, the Court finds its reasoning to be persuasive.

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] *Id.* at 713.

14

corroborates her complaints concerning her mental health. Therefore, it was error for the Appeals Council to reject these records solely because they came after the date of the ALJ's decision. While the evidence may not meet the other requirements to qualify for consideration, the Appeals Council's decision to reject it based on temporal relevance was error. Therefore, remand is required for further evaluation of the July 2018 records.

B.     TREATMENT OF MR. MANGUM'S OPINIONS

Plaintiff's therapist, Carlton Mangum, completed a Treating Source Statement of Mental Limitations form on February 21, 2018.[91] Mr. Mangum opined that Plaintiff would be moderately impaired in her ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.[92] Mr. Mangum opined that other areas of functioning were either mildly impaired or not impaired at all.[93] Mr. Mangum further opined that Plaintiff would miss two days of work per month as a result or her impairments and/or her need for medical treatment.[94] Additionally, Mr. Mangum opined that Plaintiff would be off-task five to ten percent of an eight-hour work day.[95]

The ALJ gave little weight to Mr. Mangum's opinion. With regard to Mr. Mangum's assessment that Plaintiff would likely be absent two days a month and off-task five to ten percent of the time, the ALJ found that it was not supported by any referenced evidence and not

---

[91] R. at 1766–67.

[92] *Id.* at 1767. Plaintiff incorrectly states that Mr. Mangum opined that Plaintiff would be markedly impaired. Docket No. 17, at 13. However, the form indicates that Mr. Mangum noted moderate impairments. R. at 1767.

[93] *Id.* at 1766–67.

[94] *Id.* at 1767.

[95] *Id.*

supported by the evidence in the record. Instead, the ALJ stated that Mr. Mangum's assessment appeared to rely heavily on Plaintiff's subjective allegations.

SSR 06-03p clarifies that the factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d) apply when considering opinion evidence from nonacceptable medical sources, such as Mr. Mangum.[96] These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion.[97] In their decision, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."[98]

Here, the ALJ explained that she gave little weight to Mr. Mangum's opinions because they were not supported by any referenced evidence, were not supported by the record, and appeared to heavily rely on Plaintiff's subjective allegations. These are legitimate reasons, supported by the record, to afford Mr. Mangum's opinions little weight. While Plaintiff points to the demands of her therapy sessions as support for Mr. Mangum's opinions, Plaintiff is merely requesting the Court reweigh the evidence, something it cannot do. Moreover, even accepting

---

[96] SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006).

[97] *Id.* at *4–5.

[98] *Id.* at *6.

16

that Plaintiff's treatment placed certain demands on her time, there is insufficient evidence to demonstrate that these demands significantly interfere with her ability to work. Therefore, the ALJ's evaluation of Mr. Mangum's opinions was proper.

IV. CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED for the purposes of conducting additional proceedings as set forth herein.

DATED this 27th day of November, 2019.

BY THE COURT:

Paul Kohler
United States Magistrate Judge